HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOUPANE PHAYMANY, | Case No. 2:25-cv-00854-RAJ-MLP |
| Petitioner, | ORDER |
| v. | |
| NORTHWEST IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSING CENTER, | |
| Respondent. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Boupane Phaymany's motion for temporary restraining order, dkt. # 17. The Court has reviewed the motion, the United States' response,[1] and the balance of the record. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Mr. Phaymany's motion.

---

[1] Respondent Northwest Immigration and Customs Enforcement Processing Center did not file a response to Mr. Phaymany's motion, but the United States, as an interested non-party, filed a response to "protect the Government's interests." Dkt. # 19 at 1.

ORDER - 1

## II. BACKGROUND

Mr. Phaymany is a native of Thailand and was admitted to the United States as a child of a refugee on or around March 24, 1988. Dkt. # 20 ¶ 3. On September 20, 2024, U.S. Immigration and Customs Enforcement ("ICE") took Mr. Phaymany into custody following his federal conviction for drug-related charges. *Id.* ¶ 4. October 28, 2024, an immigration judge ordered Mr. Phaymany's removal to Thailand. *Id.* ¶ 5. The government represents that it "recently discovered that [Mr. Phaymany] was born in a refugee camp in Thailand to Laotian parents and is a citizen of Laos." *Id.* ¶ 6. It therefore reopened Mr. Phaymany's removal proceedings "for the purpose of designating Laos as the appropriate country of removal and allowing [Mr. Phaymany] to make any relevant fear claims regarding Laos." *Id.* ¶¶ 7–8. However, the "immigration court has not yet issued a case notice for [Mr. Phaymany's] next hearing date." *Id.* ¶ 9.

Mr. Phaymany, proceeding pro se, initiated this case on May 1, 2025. Dkt. # 1. He filed a petition for a writ of habeas corpus challenging his detention. Dkt. # 8. On August 27, 2025, interested non-party United States filed a return to Mr. Phaymany's petition for writ of habeas corpus. Dkt. # 13. On September 18, 2025, Mr. Phaymany filed a motion for temporary restraining order, and on September 24, 2025, the United States filed an opposition to the motion. Dkts. # 17, 19.

The TRO briefing was complete as of the United States' filing of its opposition brief. *See* LCR 65(b)(5). On the morning the Court issued this order, the United States filed a "notice of pending correction to the United States' opposition to Petitioner's motion for a temporary injunction." Dkt. # 21. In the notice, the United States represents that it has come to the counsel's attention "that the immigration court considers the matter to be closed and its order granting the reopening constitutes a final order of removal to Laos." Dkt. # 21 at 1. The notice further states that "[b]ased on this new information,

ORDER - 2

ICE is reviewing the matter, and the United States will file an update shortly as to what will be happening." *Id.* at 2.  The Court does not consider the United States' newly filed notice, submitted after completion of the TRO briefing, in this temporary restraining order.  However, the Court will separately issue a briefing schedule so that the United States, Mr. Phaymany, and Respondent may address the new developments raised by the United States and seek modification of this order as appropriate.

### III.    DISCUSSION

#### A.    Third Country Removal

Mr. Phaymany seeks a temporary restraining order prohibiting Respondent from "deporting plaintiff to any country uncommon to plaintiff, including but not limited to: Vietnam, Cambodia, and Laos." Dkt. # 17 at 1.

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A plaintiff seeking a TRO must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) the balance of equities favors injunction; and (4) the relief sought is in the public interest. *Id.* at 20.  Alternatively, the plaintiff may demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," and the remaining *Winter* factors are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).  Courts "must construe pro se motions liberally." *Major v. Strange*, No. 23-cv-5307, 2024 WL 261791, at *2 (W.D. Wash. Jan. 24, 2024) (citing *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003)).

##### 1.    Scope of TRO and Habeas Petition

As a preliminary matter, the Court rejects the governments' argument that Mr. Phaymany is improperly seeking relief outside the scope of his petition for writ of habeas

corpus. To obtain injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

There is undoubtedly a relationship between Mr. Phaymany's request for a temporary injunction against deportation to a third country and his underlying challenge to his immigration detention. The former is necessary to ensure the Court retains jurisdiction to adjudicate the underlying petition. *See A.A.R.P. v. Trump*, 605 U.S. 91, 93 (2025) (granting temporary order not to remove class members "in order to preserve our jurisdiction to consider the application."). Moreover, Mr. Phaymany's TRO motion seeks relief of the same character as his habeas petition. Temporarily prohibiting his deportation to a third country is a step toward Mr. Phaymany's ultimate goal of remaining in the United States free from custody while the government works to lawfully effect his removal pursuant to a final order of removal. The cases cited by the government are easily distinguishable because they involve requests for injunctive relief that were fundamentally different from the claims in the underlying complaint. *See Pac. Radiation Oncology*, 810 F.3d at 637 ("[plaintiff's] motion for injunctive relief is based on potential misconduct entirely unrelated to its unfair trade practices claims"); *Doe v. U.S. Dep't of Homeland Security*, No. 21-cv-1128, 2021 WL 3861606, at *3 (W.D. Wash. Aug. 29, 2021) ("The requested relief goes well beyond the claims pled in the [c]omplaint.").

### 2. Likelihood of Success on the Merits

Turning to the *Winter* factors, there are serious questions going to the merits of removing Mr. Phaymany to a third country. To satisfy due process, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, -- F. Supp. 3d --, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Id.* (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).

Several decisions from this district have granted temporary restraining orders prohibiting removal to a third country while the court adjudicated the petitioner's underlying habeas petition. *See id.*, at *19 (finding petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *see also J.R. v. Bostock*, -- F. Supp. 3d --, 2025 WL 1810210, at *4 (W.D. Wash. June 30, 2025); *Phetsadakone v. Scott*, No. 25-cv-1678, 2025 WL 2579569, at *5 (W.D. Wash. Sept. 5, 2025).

Here, while the government has reopened Mr. Phaymany's removal proceedings "for the purpose of designating Laos as the appropriate country of removal," there is no hearing set and no amended order designating Laos as a country for removal. Dkt. # 20 ¶¶ 7–8. Absent a hearing, opportunity to be heard, and a final removal order, there are serious questions about the constitutionality of deporting Mr. Phaymany to Laos or any other third country.

|   |   |
|---|---|
| 1 | **3. Irreparable Harm** |
| 2 | Next, there is a likelihood Mr. Phaymany will suffer irreparable harm absent |
| 3 | preliminary relief. "It is well established that the deprivation of constitutional rights |
| 4 | 'unquestionably constitutes irreparable injury.'" *Nguyen v. Scott*, No. 25-cv-1398, 2025 |
| 5 | WL 2097979, at *2 (W.D. Wash. July 25, 2025) (quoting *Melendres v. Arpaio*, 695 F.3d |
| 6 | 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is |
| 7 | involved, most courts hold that no further showing of irreparable injury is necessary." |
| 8 | *Id.* (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)). More to |
| 9 | the point, it is "beyond dispute that [a petitioner] would face irreparable harm from |
| 10 | removal to a third country." *Nguyen*, 2025 WL 2419288, at *26 (citing *A.A.R.P.*, 605 |
| 11 | U.S. at 94). |

The government argues Mr. Phaymany's fear of being removed to a third country "is speculative" and therefore he cannot demonstrate "immediate threated injury" to satisfy the second *Winter* factor. Dkt. # 19 at 4. The Court disagrees. In a recent order, a court in this district found that "ICE's own policy" suggests "removal to a third country is an imminent threat." *Nguyen*, 2025 WL 2419288, at *26. For example, the ICE policy in effect as of that court's August 21, 2025 order provided that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures." *Id.* The policy further provided that even without diplomatic assurances, a noncitizen may still be removed with as little as 24 hours of notice, or as little as 6 hours in "exigent circumstances." *Id.* Moreover, the court rejected the respondents' "promise[] not to remove [petitioner] to a third country," and noted the "Ninth Circuit has found such voluntary promises insufficient" to overcome a showing

of irreparable harm. *Id.*, at *27 (citing *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016)). The Court agrees with the analysis in *Nguyen* and finds the second *Winter* factor favors Mr. Phaymany.

### 4. Balance of Equities and Public Interest

The final two *Winter* factors, balance of equities and public interest, merge when the government is a party to a case. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "There is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). While there is a countervailing interest in execution of final removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Nguyen*, 2025 WL 2419288, at *28 (quoting *Ala. Ass'n of Realtors v. Dep't of Health and Human Servs.*, 594 U.S. 758, 766 (2021)). Thus, the final two *Winter* factors also favor Mr. Phaymany, and the balance of equities tips sharply in his favor.

In sum, all *Winter* factors support the issuance of a temporary restraining order prohibiting Mr. Phaymany's deportation to a third country. In addition, such a temporary restraining order is necessary and appropriate to preserve the Court's jurisdiction over this matter. *See, e.g.*, *A.A.R.P.*, 605 U.S. at 93 (granting temporary order not to remove class members "in order to preserve our jurisdiction to consider the application."); *Nguyen*, 2025 WL 2097979, at *3 ("The Court may grant a TRO to preserve the Court's jurisdiction and the status quo.").

### B. Request for Immediate Release

Mr. Phaymany's motion also appears to seek an order that he be "released immediately without stipulations in the community at large or to be released to the community of Anchorage, AK." Dkt. # 17 at 2. To the extent Mr. Phaymany's motion

includes a request for his immediate release, the court denies the relief at the TRO stage, but will reassess Mr. Phaymany's request through regular adjudication of his habeas petition. *See Nguyen v. Scott*, No. 25-cv-1398, 2025 WL 2165995, at *7 (W.D. Wash. July 30, 2025) ("Because Petitioner's request for release from detention is the same relief ultimately sought by his habeas petition . . . it falls outside the limited purpose of a TRO and should instead be decided either after a preliminary injunction hearing or through regular adjudication of the habeas petition itself.").

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's motion for temporary restraining order, dkt. # 17, as follows:

(1) The Court **ORDERS** that Respondent and all its officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them, including interested non-party United States, are prohibited from removing Petitioner to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge; and

(2) The Court **DENIES** Petitioner's request for a temporary restraining order directing his immediate release.

The Court will issue a separate briefing schedule to give the United States, Petitioner, and Respondent an opportunity to address new developments raised in the United States' notice of pending correction, dkt. #21.  This temporary restraining order shall remain in effect, absent a successful motion or further order to modify or dissolve it, until this Court issues a final decision on Petitioner's habeas petition.

The Clerk is directed to send copies of this order to Petitioner and Magistrate Judge Michelle L. Peterson.

Dated this 25th day of September, 2025.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge